SHIRLEY MASTALER, Plaintiff-Appellant, *v.* GENERAL FIRE & CASUALTY CO., Defendant-Appellee.

Second District   No. 79-552

Opinion filed July 3, 1980.

Smith & Munson, of Chicago, for appellant.

Victor J. Piekarski, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This is a breach of contract action. Plaintiff, Shirley Mastaler, the assignee of the insured, brought suit against defendant, General Fire & Casualty Company, alleging that the insurance company wrongfully failed to comply with the terms of its liability insurance policy. Count I of plaintiff's complaint prayed for judgment against defendant on the theory that the company unjustifiably refused to defend its insured. Count II sought recovery for the company's failure to settle the underlying lawsuit within the policy limits. The trial court granted summary judgment for defendant on each count, and plaintiff appeals.

We affirm.

The facts of this case are not in dispute. On August 11, 1966, plaintiff was permanently and severely injured in a fall from the back porch of a second floor apartment in a building located at 516 Main Street, West Chicago, Illinois. At the time of the accident, the building was owned by Mary Burckal, who had leased the property to Phillip P. Sparanga. Sparanga, in turn, assigned the lease to Ethel Hallock, who operated a beauty parlor on the first floor and sublet the second floor apartment to certain unnamed tenants. On the date of the accident, plaintiff was an invitee of the second floor tenants, and was injured when she leaned against a rotted porch railing, which gave way under her weight. Plaintiff fell from the second floor porch to the ground, a distance of about 18 feet.

She fractured her spinal cord in the fall, and as a result is permanently paralyzed.

Plaintiff thereafter commenced an action in the circuit court of Du Page County against the owner of the building, Mary Burckal, and the present lessee, Ethel Hallock. The relevant portions of the complaint set forth the facts of the occurrence basically as noted above, then alleged that defendants were negligent in failing to repair or maintain the railing on the second floor porch, or in failing to warn plaintiff of the danger. The insured, Ethel Hallock, requested defendant to undertake her defense in this lawsuit, but the company declined to do so, citing a lack of coverage. Defendant later refused plaintiff's offer to settle the case within the policy limits. The cause then proceeded to trial, and judgment was rendered in the amount of $133,000 in favor of plaintiff and against all defendants. $33,000 of the judgment was satisfied by Mary Burckal, and the balance remains unpaid.

The insurance policy mentioned above had originally been issued by defendant to Phillip Sparanga, who had assigned his rights and duties under the policy to the present lessee, Ethel Hallock. It remained in full force and effect at the time of the accident in question. By its policy of insurance, defendant agreed: "[t]o pay on behalf of its insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ？ ＊ ＊ sustained by any person caused by accident and *arising out of the hazards hereinafter defined.*" (Emphasis ours.) The word "hazard" is, in turn, defined as: "The ownership, maintenance, or the use of the premises and all operations necessary or incidental thereto." The word "premises" is further defined as: "[t]he premises designated in the declarations and includ[ing] the ways immediately adjoining on land."

In the declarations of the policy, the insured was identified as Phillip Sparanga, 516 Main Street, West Chicago, Illinois. An endorsement attached to the back of the policy indicated the assignment of the insurance policy to Ethel Hallock, the lessee at the time of the accident. The insured hazard is listed as a "beauty parlor," without qualification or further description. The interest of the named insured in the premises was indicated to be that of a tenant and the part occupied by the named insured was listed as the "first floor."

Subsequent to the entry of judgment, plaintiff, Shirley Mastaler and Ethel Hallock entered into an agreement in which plaintiff was substituted for Ethel Hallock in any action Hallock may have had against her insurer, General Fire and Casualty Company. Plaintiff thereafter brought this breach of contract action against the defendant insurance company. Concluding that the insurance policy provided no coverage to

an accident occuring on the second floor of the building, the trial court granted summary judgment in favor of defendant on both counts of plaintiff's complaint.

On appeal, plaintiff argues that defendant wrongfully failed to defend its insured, Ethel Hallock, in the underlying lawsuit, and the defendant is now estopped from asserting lack of insurance coverage in this action to enforce the provisions of the insurance policy. On this issue the law is quite clear. As stated in the recent case of *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 947, 352 N.E.2d 60, 62:

> "The courts of this State have determined that the liability insurer's duty to defend a suit in such case is determined by the allegations of the complaint. If the complaint states facts which bring the claim potentially within the coverage of the policy, the insurer is obligated to defend. It can safely and justifiably refuse to defend only when the allegations of the complaint clearly show that the claim is beyond the policy coverage. When an insurer unjustifiably refuses to afford a defense for the insured, it is later estopped from raising the defense of noncoverage in a suit against it to enforce a judgment against the insured. *Palmer v. Sunberg* (3rd Dist. 1966), 71 Ill. App. 2d 22, 217 N.E.2d 463, *Tiffiny Decorating Co. v. General Accident, Fire & Life Assurance Co.* (1st Dist. 1973), 12 Ill. App. 2d 597, 299 N.E.2d 378.)"

See also *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.

■■ Conceding the correctness of the principles set forth in *Elas* and *Sims*, defendant argues that it had no duty to defend its insured, Ethel Hallock, in the underlying lawsuit, because the policy in question here clearly did not cover an accident occurring on the second floor of the building. We agree. The insurance policy provided coverage to an accident only if it arose out of the "hazard" set forth in the declarations. In this case, the insured hazard was listed in the policy as a "beauty parlor," which is admittedly on the first floor of the building. It is true, as plaintiff notes, that in another section of the policy the insured is listed as "Phillip P. Sparanga, 516 Main Street, West Chicago, Illinois." However, we believe that this section was merely intended to identify the insured and not to define or provide for insurance coverage. Since all the allegations of plaintiff's complaint pertain to an accident occurring on the second floor of the building, and to negligence in the maintenance of the second floor porch, defendant had no duty to defend its insured on the complaint because coverage extended only to accidents arising out of the beauty parlor, which is located on the first floor. Thus, defendant is not estopped from asserting lack of insurance coverage in this lawsuit. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

To avoid this self-evidence conclusion, plaintiff argues that there was at least a potential for insurance coverage because the second floor apartment could be considered to be an "operation necessary or incidental" to the insured hazard, the beauty parlor. In support of this argument, plaintiff relies upon *Snader v. London & Lancashire Indemnity Co. of America* (1949), 360 Pa. 548, 62 A.2d 835, and *Thaxton v. Federated Mutual Implement & Hardware Insurance Co.* (W.D. Vir. 1967), 274 F. Supp. 699. Consideration of this argument requires a thorough discussion of these cases.

In *Snader*, the plaintiff leased a large tract of land which contained a golf course, a restaurant and dance floor, a recreation hall, bowling alleys, a swimming pool, bathhouses, and other structures. The insurance policy issued to plaintiff provided coverage for accidents arising out of "hazards" which were defined as "the ownership, maintenance or use, for the purposes stated in the Declarations, of the premises and all operations during the policy period which are necessary or incidental to such purposes." The policy declarations stated the location of the premises as "Overlook Golf Course, R.D.#3, Lititz Pike, Lancaster, Pennsylvania," and the "purposes of use" as "Golf Course." The "Portion of the Premises Insured" was stated to be "Entire." A patron of the swimming pool was injured in a bathhouse located on the property, but the insurance company refused to acknowledge liability and refused to defend. Plaintiff then brought a breach of contract action against the insurance company. In affirming a judgment in favor of plaintiff, the court held that an injury occurring in a bathhouse near the golf course was covered by the policy. In so holding, the court stated:

> "* * * it is true that the 'Location' of the 'Premises' was stated to be 'Overlook Golf Course' and 'the Purposes of Use' were listed as 'Golf Course', but the term 'Golf Course', in both these connections, was apparently used not merely to designate the limited portion of ground laid out for that sport, but rather as descriptive of the leased premises generally, golf being the main but not the only activity carried on there." 360 Pa. 548, 550, 62 A.2d 835, 836.

The *Thaxton* case presents a factual situation similar to that presented in the case at bar. In *Thaxton*, the plaintiff operated a grocery store on the ground floor of the building and rented rooms on the second floor. One of the roomers was injured while using an outside stairway to the second floor of the building, and brought suit against plaintiff to recover damages for his injuries. Plaintiff's insurance company refused to defend the action, contending that the policy covered only the ground floor of the building. The policy stated that the insurance company would be liable for damages which arise out of the "ownership, maintenance or

use of the premises" which the policy described as "the premises designated in the declarations." The only declarations referring to the premises and relevant to the question of the property covered read as follows:

"1. Named Insured and P.O. Address
THAXTON GROCERY
THAXTON, K W BUCK DBA
RIVERDALE BOX 8 SOUTH
BOSTON VA.

\* \* \*

3. Location of premises: (Enter 'same' if same location as above)
1. S/S HWY 58 SOUTH BOSTON VA." (274 F.2d 699, 702.)

The court then determined that the policy declaration referring to K. W. Thaxton as doing business as a grocery were merely intended to identify the insured. Finding the policy ambiguous as to the exact "premises" covered, the court construed the policy against the insurer and accordingly held that the accident was covered under the plaintiff's insurance policy.

● 2 We believe that *Snader* and *Thaxton* are distinguishable from the case at bar. In both of the cited cases, the policy declarations did not identify the property to be insured with any precision or specificity. Thus, the policies were ambiguous and such ambiguity was construed strictly against the insurance company because it drafted the policy. In the instant case however, the "hazard" insured is identified with specificity in the policy declarations as a "beauty parlor." There is thus no ambiguity in the policy in question here as to the extent of insurance coverage.

Nor do we understand *Snader* or *Thaxton* as holding that insurance coverage may extend to property adjoining the insured premises under the clause in the policy providing coverage to "operations necessary or incidental" to the insured premises. Clearly, neither case addressed or considered the issue. In any event, we believe such an argument is without merit. The word "operation," as used in its commonly used sense, connotes the performance of work or an activity. An apartment located on the second floor of a building could be considered a "location," "place," or in insurance parlance, "premises," but not an "operation." Nor could the act of renting the second floor apartment be considered an "operation necessary or incidental to" the beauty parlor; in fact, the rental of the apartment is completely independent of the beauty parlor's operations.

In sum, we hold that the policy in question here clearly and unambiguously provided coverage to the beauty parlor located on the first floor of the building, and such coverage did not extend to the second floor of the building. Since plaintiff's complaint referred to an accident

occurring on the second floor of the building and alleged negligence in connection with the second floor porch, the accident was clearly outside the provisions of the policy and defendant, therefore, had no duty to defend its insured on the complaint. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.